FRED. W. McKINNEY and another *vs.* ANDREW M. HARVIE.

December 19, 1887.

**Vendor and Purchaser—Written Contract—Receipt.**—The instrument set forth in the complaint, acknowledging the receipt of a sum of money in part-payment of a certain lot described, and signed by the defendant, *held* to be a receipt only, and not a contract for the sale of land, and hence subject to be explained or supplemented by evidence *aliunde.*

**Principal and Agent—Payment by Agent.**—Evidence in this case *held* sufficient to show that the sum specified in the receipt was paid by the plaintiff as agent, on a parol agreement for the purchase of land for another person, who was the principal in the transaction.

**Statute of Frauds—Recovery of Money Paid by a Plaintiff, who Refuses to Perform.**—Where a vendor under a contract for the sale of lands, which is within the statute of frauds because not in writing, is nevertheless willing and offers to perform on his part, but the vendee refuses to fulfil, and repudiates the contract, the latter is not entitled to recover an instalment of purchase-money previously paid.

Plaintiffs brought this action in the municipal court of Duluth, to recover money paid on a contract of sale of land. The only written memorandum of the sale was the receipt which is recited in full in

the opinion. The action was tried by a jury, and defendant had a verdict. Plaintiffs appeal from the judgment.

*D'Autremont & Cheeseman,* for appellants.

*White, Shannon & Reynolds,* for respondent.

VANDERBURGH, J. The receipt set forth in the complaint, as follows: "Received of F. W. McKinney one hundred dollars in part-payment of lot seventy-six, (76,) block thirty-two, (32,) Duluth, Minn., third division,"—and signed by defendant, was open to explanation, and the defendant was properly permitted to show the transactions connected with it, and that in the matter of the purchase of the lot the plaintiffs were acting as the agents of a third party, and paid the money for him. It is not a contract for the sale or purchase of land, and it is subject to be explained and supplemented by evidence *aliunde.* It is simply evidence of the payment of the sum of money specified for the particular object named. *Eighmie* v. *Taylor,* 98 N. Y. 288, 295; *Filkins* v. *Whyland,* 24 N. Y. 338; *Ryan* v. *Ward,* 48 N. Y. 204; *Barickman* v. *Kuykendall,* 6 Blackf. 21, 24.

The evidence in the case tended to show that plaintiffs were real-estate brokers at Duluth, and on or about the 18th day of June, 1886, applied to appellant to purchase the lot in question, obtained his terms, and agreed by parol to take the lot at the price named by him, and paid him $100, and took the receipt referred to; that this was done in contemplation of the purchase of the lot by a customer procured by them, one Chapman, with whom they had previously conferred, and who was expected to purchase it. Soon after, the parties were brought together, and it was mutually understood that the negotiations for the purchase were made for Chapman, who agreed to take the lot, and pay the price indicated. Afterwards, on or about July 15, 1886, plaintiffs prepared a deed in due form running to Chapman, and, at their instance, it was executed by defendant to be delivered to him, and left with them. Chapman subsequently refused absolutely to take the deed and complete the purchase, though he made no objection to the title. Defendant's evidence also tends to show that he subsequently applied to the plaintiffs, and that they refused to take the lot, and referred defendant to Chapman. There is no evidence that Chapman at any time afterwards offered or was

willing to pay for the property, and fulfil the agreement; on the contrary, he finally abandoned and repudiated it altogether; and it also expressly appears by the testimony of the plaintiff McKinney, who attended to the matter exclusively, that he never asked for a deed for himself, or offered to pay the purchase-money; and it does not appear that, after he disclosed that the purchase was made for Chapman, he made any claim that it was made for himself. The evidence also shows that plaintiffs, after Chapman refused the deed, sued him for their fees and expenses, including the $100 in question, which they alleged was advanced and expended by them for him as his agents in the premises, and recovered judgment therefor. Upon this evidence the jury were entitled to find that the plaintiffs were the agents of Chapman in the negotiations, and that the defendant was fully warranted in treating the latter as the principal in the transaction. The instructions upon this subject given by the court, as applied to the evidence, were substantially correct.

The following request of plaintiffs was refused: "That the defendant putting it out of his power to convey the lot to McKinney, by a sale of the same to the church society, McKinney may treat the contract as rescinded, and recover back the money paid as part consideration." But if, as the jury might find, and doubtless did find, McKinney was merely a broker negotiating for Chapman, whom he put forward as the purchaser, he has no right now to change his position, and claim the benefit of the alleged contract for himself. But this instruction was improper for another reason. The jury might find, upon the evidence, not only that defendant was not in default, and that Chapman was, and had forfeited all his rights under the alleged contract, and to recover any moneys paid thereunder, but there is evidence tending to show, also, a refusal on the part of the plaintiffs to take the property themselves. The defendant testifies, and it is not contradicted: "I went to plaintiff's office four or five times to see what he was going to do about it." And after Chapman refused to take the lot he says: "I went to plaintiff and asked him if he was going to take that lot. He said: 'No; I have nothing to do with it. Go to Chapman.' This was three weeks after I had signed that deed. McKinney requested me to sign the deed at the time. I went then to

close it up. I signed it at his request." And there was no subsequent offer or demand by the plaintiffs. It is true that, in October following, the defendant sold and conveyed the lot to a third party; but as he had given both principal and agent ample opportunity to take it under the agreement, and as the evidence tends to show both had notified him of their refusal, and the contract had been repudiated by them, he had done all that was reasonably necessary for his own protection. He was not obliged to hold the property always, but might, as he did, dispose of it after a reasonable time.

It is not material that the contract was by parol, and within the statute of frauds. The purchaser cannot recover moneys paid under it if the defendant was not in default. It was not his fault that it was not fulfilled, but wholly that of Chapman and the plaintiff. Under such circumstances the instalment ought not, *ex æquo et bono,* to be recovered back. *Plummer* v. *Bucknam,* 55 Me. 105; *Gray* v. *Gray,* 2 J. J. Marsh. 21; *Coughlin* v. *Knowles,* 7 Met. 57, 62; *Sennett* v. *Shehan,* 27 Minn. 328, (7 N. W. Rep. 266;) *Ketchum* v. *Evertson,* 13 John. 359, 365, (7 Am. Dec. 384.)

The affidavits disclosing the statements and admissions of a juror subsequent to the trial, and showing prejudice on his part, cannot be considered.

Judgment affirmed.