FRANCIS ROGERS v. PHILIP H. GROSS and Others.[1]

January 18, 1897.

Nos. 10,317—(263).

**Corporation—Subscription to Stock—G. S. 1894, § 3415.**

Under the provisions of G. S. 1894, § 3415, an agreement entered into by the subscribers for stock shares in a corporation that, for each share paid for, a certificate for two or more shares shall be issued to the shareholders, is forbidden, is nonenforceable and void.

**Same—Equitable Rights.**

No equitable rights of the creditors of an insolvent corporation can be based upon the bare fact that such an agreement has been entered into, in an action to enforce the double liability of stockholders. Nor have stockholders who have accepted certificates issued in accordance with such an agreement any equitable rights, as against other subscribers who have paid for their stock, but have not applied for or received certificates, which may be enforced in such an action.

**Same—Liability of Stockholders.**

It was verbally agreed between all of the subscribers, except one, for stock shares in a corporation, that, for each share paid for, a certificate for five shares should be issued and delivered to the subscribers. Some of the subscribers paid for shares, and received certificates in accordance with this agreement, which certificates were signed by G., as president of the corporation. G. paid for the shares he had subscribed for, but did not take a certificate. The corporation subsequently became insolvent, and, in an action to enforce the double liability against the stockholders, it is *held* that G. is only liable in an amount equal to the par value of his shares actually subscribed for, and is not liable to an amount equal to five times their par value.

Appeal by defendant Gross from an order of the district court for Morrison county, Searle, J., denying a motion for a new trial. Modified.

*George W. Stewart*, for appellant.

This is an action to enforce the so-called double liability of stockholders. The provision of the constitution creates an individual liability of the stockholder. McKusick v. Seymour, 48 Minn. 158,

[1] Reported in 69 N. W. 894.

50 N. W. 1114. The complaint alleges an assignment to the plaintiff for a valuable consideration of the judgment against the corporation mentioned in the complaint. The amount of the consideration is not disclosed, nor whether plaintiff is seeking to speculate upon the liability of the defendants. The law will not permit speculation upon such a liability. While the original creditor may recover the full amount of his debt, his assignee, if he can recover at all, can recover only enough to indemnify him against loss. It is compensation and not fulfilment of a legal obligation that is covered by the constitutional provision. Hospes v. Northwestern M. & C. Co., 48 Minn. 174, 50 N. W. 1117; Wilson v. St. L. & W. R. Co., 120 Mo. 45, 25 S. W. 527; Kitchen v. St. Louis, K. C. & U. Ry. Co., 8 Am. Corp. Cas. 199; Cook, Stockh. 660.

The court erred in admitting in evidence the alleged subscription paper. The relation of stockholder can only be established by showing a stock subscription accepted by the company, or showing a direct contract with the company. The only competent evidence of ownership of stock would be either a certificate or the books of the company. Oral evidence was not competent to prove the agreement to issue bonus stock because there was no note or memorandum of the contract. A contract for sale of corporate stock, when no memorandum is made, no stock issued and no payment made upon it, is within the statute of frauds, G. S. 1894, § 4210, and is void. Tisdale v. Harris, 20 Pick. 9; Baltzen v. Nicolay, 53 N. Y. 467; North v. Forest, 15 Conn. 400; Pray v. Mitchell, 60 Me. 430; Fine v. Hornsby, 2 Mo. App. 61; Colvin v. Williams, 3 Harr. & J. (Md.) 38; Southern L. I. & T. Co. v. Cole, 4 Fla. 359; Johnson v. Mulry, 4 Robertson, 401. There was no memorandum of the contract and no payment by Gross. Any payments made by him were made subsequently, but a payment upon an oral contract, to take it out of the statute, must be made at the time of sale, or be made with a reaffirmance of the contract at the time of payment. Jackson v. Tupper, 101 N. Y. 515, 5 N. E. 65; Hunter v. Wetsell, 57 N. Y. 375, s. c. 84 N. Y. 549; Allis v. Reed, 45 N. Y. 142. There is no evidence that the oral agreement was ratified, approved or adopted by the corporation. There was no consideration for the agreement.

The agreement was void upon the ground of public policy. Apart from statute it is the general rule that shares of corporate stock can

67 M.—15

only be issued in the first instance for their full value. The corporation must receive an equivalent at so much per share. Upton v. Trebilcock, 91 U. S. 45; Chouteau v. Dean, 7 Mo. App. 210; Kehlor v. Lademan, 11 Mo. App. 550; Williams v. Evans, 87 Ala. 725, 6 South. 702; Zelaya Min. Co. v. Meyer, 28 N. Y. St. Rep. 759, 8 N. Y. Supp. 487; Sturges v. Stetson, 1 Biss. 246, Fed. Cas. No. 13,568; Thompson v. Reno Savings Bank, 19 Nev. 103, 7 Pac. 68; Lee v. Imbrie, 13 Ore. 510, 11 Pac. 270; Great Western Tel. Co. v. Gray, 122 Ill. 630, 14 N. E. 214; Osgood v. King, 42 Iowa, 478; Jewell v. Paper Co., 101 Ill. 57; Joy v. Manion, 28 Mo. App. 55; Crawford v. Rohrer, 59 Md. 599; Topeka Mnfg. Co. v. Hale, 39 Kan. 23, 17 Pac. 601; Tobey v. Robinson, 99 Ill. 222; Ex parte Daniell, 1 De Gex & J. 372; West C. Ry. Co. v. Mowatt, 12 Jur. 407; Coolidge v. Goddard, 77 Me. 579, 1 Atl. 831; Oliphant v. Woodburn C. & M. Co., 63 Iowa, 332, 19 N. W. 212; Knowlton v. Congress & E. Springs Co., 57 N. Y. 518; Mann v. Cooke, 20 Conn. 188; Coleman v. Howe, 11 Am. Ry. & Corp. R. 19, 39 N. E. 725. The term "public policy" is hard to define. Courts declare that, whenever any contract conflicts with the morals of the times and contravenes the established interests of society, it is void as against public policy. Ray, Contr. Limit. 197; 2 Thompson, Corp. § 1582; Woodstock Iron Co. v. Richmond & D. Extension Co., 129 U. S. 643, 9 Sup. Ct. 402.

The agreement in controversy contemplated (1) a fraud upon the public in reference to the assets of the company; (2) that the stock should earn excessive dividends; (3) an advantage upon incoming stockholders; and was a corrupt agreement. The contract was therefore void upon grounds of public policy. Fuller v. Dame, 18 Pick. 472; Bestor v. Wathen, 60 Ill. 138; Rue v. Missouri Pac. Ry. Co., 74 Tex. 474, 8 S. W. 533; Chippewa Valley Ry. Co. v. Chicago, St. P., M. & O. Ry. Co., 75 Wis. 224, 44 N. W. 17; Attaway v. Third Nat. Bank, 93 Mo. 485, 5 S. W. 16; Atlee v. Fink, 75 Mo. 100; Bliss v. Matteson, 45 N. Y. 22.

The constitutional liability of stockholders is created exclusively for the benefit of corporate creditors. It is not an asset of the corporation, and the corporation has no interest in it. The corporation cannot enforce it by assessment upon stockholders, nor upon insolvency assign it for the benefit of creditors. It is a liability running directly from the shareholders to the creditors of the corpora-

tion. It can only be enforced by the creditors themselves in their own right and for their own benefit. In re People's L. S. Ins. Co., 56 Minn. 180, 57 N. W. 468; Bristol v. Sanford, 12 Blatch. 341, Fed. Cas. No. 1,893; Arenz v. Weir, 89 Ill. 25; Billings v. Robinson, 94 N. Y. 415; Farnsworth v. Wood, 91 N. Y. 308; Cuykendall v. Corning, 88 N. Y. 129; Liberty F. C. Assn. v. Watkins, 70 Mo. 13; Cook, Stockh. § 218. This constitutional liability is purely statutory. Allen v. Walsh, 25 Minn. 543; Canal & M. Co. v. Woodbury, 14 Cal. 265; Neilson v. Crawford, 52 Cal. 248; Sonoma V. Bank v. Hill, 59 Cal. 107; Morrow v. Superior Court, 64 Cal. 383, 1 Pac. 354; Hyman v. Coleman, 82 Cal. 650, 23 Pac. 62; Green v. Beckman, 59 Cal. 545; Moore v. Boyd, 74 Cal. 167, 15 Pac. 670; Parrott v. Colby, 6 Hun, 55. The rule is otherwise in federal courts upon cases arising under the national bank act, but this act expressly declares the liability of executors and administrators and is enforcible by the receiver for the benefit of creditors. The authorities warrant the assertion that this constitutional liability is purely statutory, belongs to the creditors and does not survive the death of the stockholders. It is an original and not a secondary liability. In other words the stockholders are original debtors and not guarantors or sureties. Middletown Bank v. Magill, 5 Conn. 28; Moss v. Oakley, 2 Hill, 265; Moss v. Averell, 10 N. Y. 449; Culver v. Third Nat. Bank, 64 Ill. 528; Hawthorne v. Calef, 2 Wall. 10.

The constitutional liability is therefore a liability purely personal and not assignable. It arises purely by operation of law and is analogous to a vendor's lien, which is not assignable. Hammond v. Peyton, 34 Minn. 529, 27 N. W. 72; Law v. Butler, 44 Minn. 482, 47 N. W. 53. Hence an assignment of the debt will not convey an assignment of this liability.

A director or stockholder in a corporation cannot make profit at the expense of the company or of its other stockholders. If he buys in a claim against it, it is entitled to the benefit of the purchase. Thompson v. Meisser, 108 Ill. 359; Abbey v. Long, 44 Kan. 688, 24 Pac. 1111; Smith v. Mosby, 9 Heisk. 501; Lingle v. National Ins. Co., 45 Mo. 109; Bulkley v. Whitcomb, 121 N. Y. 107, 24 N. E. 13; Chouteau Ins. Co. v. Floyd, 74 Mo. 286; Kitchen v. St. Louis Ry. Co., 69 Mo. 224; Balch v. Wilson, 25 Minn. 299. If a stockholder individually liable to creditors buys any claims against the company

at a discount, he can only claim a discharge to the amount paid by him. Thompson v. Meisser, supra; Abbey v. Long, supra.

*Lindbergh, Blanchard & Lindbergh,* for certain respondents.

The case of Holland v. Duluth I. M. & D. Co., 65 Minn. 324, 68 N. W. 50, is conclusive that Gross was a stockholder. He is also liable on bonus stock the same as the other stockholders. The agreement was accepted by the company. The statute of frauds does not apply to contracts of purchase of stock in a corporation not yet formed. 23 Am. & Eng. Enc. Law, 594. The original stock subscription is a contract. Minneapolis T. M. Co. v. Davis, 40 Minn. 110, 41 N. W. 1026; 23 Am. & Eng. Enc. Law, 789.

There is nothing in the language of the constitution which supports appellant's claim that this liability cannot be enforced by an assignee of it. The liability survives against the representatives of a deceased stockholder. Richmond v. Irons, 121 U. S. 27, 7 Sup. Ct. 788; Irons v. Manufacturers' Nat. Bank, 21 Fed. 197; Chase v. Lord, 77 N. Y. 1; Beach, Priv. Corp. 135, and cases cited on page 136. Cases under the national bank act were not decided upon the theory indicated by appellant. See Richmond v. Irons, supra; In re Martin, 56 Minn. 420, 57 N. W. 1065. The liability is contractual. Hawthorne v. Calef, 2 Wall. 10; Thompson, Liab. Stock. 25; Day v. Vinson, 78 Wis. 198, 47 N. W. 269; Beach, Priv. Corp. 24, 146. When such liability is created as a punishment, it is sometimes held to be penal. When a statute establishes a liability in favor of a particular class of persons, it has been contended that such liability was a personal privilege and could not be transferred, but the courts hold otherwise. Day v. Vinson, supra; 3 Thompson, Corp. § 3143; Reading Ind. Mnfg. Co. v. Graeff, 64 Pa. St. 395; Pilcher v. Brayton, 17 Hun, 429; Beach, Corp. 158; Krauser v. Ruckel, 17 Hun, 463; Bonnell v. Wheeler, 1 Hun, 332.

The assignment of a demand entitles the assignee to every assignable remedy, lien or security available by the assignor as a means of indemnity or payment, unless expressly excepted from or reserved in the transfer. Schlieman v. Bowlin, 36 Minn. 198, 30 N. W. 879; Moosbrugger v. Walsh, 35 N. Y. Supp. 550; Lowry v. Inman, 46 N. Y. 119; Flash v. Conn, 16 Fla. 428; Appeal of Hammond, 123 Pa. St. 503, 16 Atl. 419; Craig's Appeal, 92 Pa. St. 396;

Oneida Bank v. Ontario Bank, 21 N. Y. 490; Cook, Stockh. 218, and note; Woodruff & B. I. W. v. Chittenden, 4 Bosworth, 406; American F. Co. v. Garrett, 110 U. S. 288, 4 Sup. Ct. 90; Potter v. Stevens M. Co., 127 Mass. 592.

*Calhoun & Bennett*, for other respondents.

As between the corporation and its stockholders, the agreement to issue shares for less than their par value is valid. Hospes v. Northwestern M. & C. Co., 48 Minn. 174, 50 N. W. 1117. The only persons who can complain are the creditors. Winston v. Brooks, 129 Ill. 64, 21 N. E. 514; Sawyer v. Hoag, 17 Wall. 610; 2 Thompson, Corp. § 1590; First National Bank v. Gustin M. C. M. Co., 42 Minn. 327, 44 N. W. 198. See Scoville v. Thayer, 15 Otto, 143. The issue of a certificate of stock is not necessary to constitute one a stockholder. Pacific Nat. Bank v. Eaton, 141 U. S. 227, 11 Sup. Ct. 984; American P. I. S. Co. v. State Board, 56 N. J. Law, 389, 29 Atl. 160; Barron v. Burrill, 86 Me. 66, 29 Atl. 939; Marson v. Deither, 49 Minn. 423, 52 N. W. 38.

The liability of a stockholder is contractual. Hawthorne v. Calef, 2 Wall. 10; Flash v. Conn, 109 U. S. 371, 3 Sup. Ct. 263; Wiles v. Suydam, 64 N. Y. 173; Norris v. Wrenschall, 34 Md. 492; Erickson v. Nesmith, 46 N. H. 371; Corning v. McCullough, 1 N. Y. 47; Coleman v. White, 14 Wis. 700; Lowry v. Inman, 46 N. Y. 126; Paine v. Stewart, 33 Conn. 516; Bond v. Appleton, 8 Mass. 472, 5 Am. Dec. 111; Hutchins v. New England C. M. Co., 4 Allen, 580; Grand Rapids Savings Bank v. Warren, 52 Mich. 557, 18 N. W. 356; Hodgson v. Cheever, 8 Mo. App. 328; Manville v. Edgar, 8 Mo. App. 324; Freeland v. McCullough, 1 Denio, 414, 43 Am. Dec. 685; Aultman's Appeal, 98 Pa. St. 505; Sackett's Harbor Bank v. Blake, 3 Rich. Eq. 225; Woods v. Wicks, 7 Lea. 40; Note to United States v. Stanford, 161 U. S. 412, 40 L. C. P. page 751.

COLLINS, J. Action to enforce the double liability of stockholders in a corporation. Gross, the only appellant, had subscribed for 20 shares of stock, of the par value of $100 each, was the principal promoter, was the president and leading spirit of the enterprise. He paid for the shares so subscribed for, but no certificate was issued to him. The corporation became insolvent, and made an as-

signment for the benefit of its creditors. The principal controversy here is as to the legal effect of a finding of fact made by the court below, and upon which it based a conclusion of law that appellant was liable in the first instance to an amount not exceeding $10,000, five times the amount of his subscription and shares, for which sum judgment against him was ordered to be entered. With a single exception, each of the subscribing stockholders, defendants, was also held liable, because of the findings, in five times the amount of his subscription.

This finding was, in effect, as follows: That, prior to the issuance of any of the stock certificates, it was mutually agreed between all of the defendants, with the exception before mentioned, and the corporation, that, for each share of stock subscribed and agreed to be taken, a certificate for five shares of the stock for each one paid for should be issued, and that several of the defendants received and accepted certificates of this character, relying upon the agreement, and with the understanding that all should receive and accept certificates representing five times the amount of stock subscribed and paid for. From the evidence it appeared that the agreement between the stockholders rested in parol, and, if acted upon by the corporation, it was at a meeting where, according to the minutes (the only evidence), it was resolved that the board of directors be "directed to call the first assessment on stock at once of twenty-five per cent., all stock to be issued fully paid upon payment of twenty per cent. of face value, to be called in four equal instalments."

We are of the opinion that there is nothing in this language, whatever it may mean, which shows that the corporation acted in any manner upon the verbal agreement said to have been entered into by and between the shareholders. It was also proven upon the trial that Gross, as president, signed all certificates issued in pursuance of the agreement.

It is claimed by appellant's counsel that this agreement cannot be enforced against him, because it was not in writing, is within the statute of frauds,[2] and that the acceptance of certificates by some of the defendants, in accordance with it, was not part performance sufficient to take it out of the statute. As we regard the

[2] G. S. 1894, § 4210.

case, it is not necessary for us to determine whether this was an agreement within the statute, or merely a contract between the stockholders to enter into personal relations with each other. The agreement itself was forbidden by law, was nonenforcible and void. If so, no equitable rights of creditors or other stockholders could be founded upon the bare fact that it had been entered into. No equitable rights based upon it could be enforced, except, perhaps, by corporate creditors against such stockholders as had actually received and accepted certificates for what may be called "bonus" or "watered" stock, and that question is not before us on an appeal taken by Gross alone.

By G. S. 1894, § 3415, it is provided that:

"Corporations having capital stock divided into shares, unless specially authorized, shall not issue any shares for a less amount to be actually paid in on each share than the par value of the shares first issued" * * *;

And this was exactly what these defendants undertook to do when they verbally agreed to issue five for one. They attempted to perform an act prohibited by statute, and void. While the prohibition is not as directly expressed as it might be, the intent of the legislature is plain, and public policy requires that the language of the statute be given full force. If this is not done, an opportunity is afforded to stockholders in corporations to defraud the public by placing upon the market shares which they have obtained for nothing, and which represent no real capital,—nothing of actual value. The statute was enacted for the government and good conduct of the shareholders themselves, as well as for the benefit and protection of the public, on the general grounds of expediency; and it must receive a construction which will render it effective.

But it is argued that as to those defendants who have received their stock certificates relying upon the illegal agreement, Gross is estopped, and that, as those defendants have been concluded as to creditors, he cannot escape a like liability. But other stockholders are not innocent parties. They were wrongdoers, as well as Gross, and, as between wrongdoers, the doctrine of estoppel is unknown.

And it is also argued that the creditors of the corporation may invoke this doctrine. But, to permit this, we should have to allow these creditors to enforce an equity based upon an agreement for-

bidden by the statute, not acted upon by Gross, nor relied upon by them. He never took a certificate for any stock, and there was no evidence, nor was there any finding, that the creditors had any knowledge of this agreement. Certainly, they did not rely upon it when giving credit to the corporation. And even this knowledge, if they had it, would be accompanied by notice that the agreement was illegal and void,—a direct violation of the statute. We again call attention to the fact that we are not considering the rights of creditors where, in pursuance of an unlawful agreement, stock certificates have been actually issued to and accepted by shareholders.

The court below erred in its conclusion of law that, in the first instance, plaintiff was entitled to judgment against Gross in an amount not exceeding $10,000; but, as the findings of fact are full and complete as to the number of shares owned by him, a new trial is unnecessary.

It is ordered that, when the cause is remanded, the conclusion referred to be amended so that, in the first instance, judgment against Gross shall not be entered for an amount exceeding $2,000, and the order appealed from is modified to this extent.