## J. DE LA MOTTE v. NORTHWESTERN CLEARANCE COMPANY and Another.[1]

June 26, 1914.

Nos. 18,640—(181).

**Corporation — illegal agreement between promoters.**

Plaintiff and defendant Kreidler with other persons were jointly associated together for the purpose of promoting and organizing a corporation; plaintiff and Kreidler secretly agreed to divide equally between themselves whatever stock they could induce the corporation, when organized, to issue to Kreidler as a promoter; the corporation was subsequently organized, and the promoters, including plaintiff and Kreidler, were made members of the board of directors; at their first meeting plaintiff moved that one-third of the stock of the corporation be issued to Kreidler, and the motion was entered in the minutes, with some amendments, as carried; plaintiff voted

[1] Reported in 148 N. W. 47.

---

Note.—The question of the liability of promoters to a corporation and its members is treated in notes in 25 L.R.A. 90 and 18 L.R.A.(N.S.) 1106. And upon the liability of a corporation on contracts of promoters, see note in 26 L.R.A. 544.

for and procured the adoption of the motion; no mention was made of the secret agreement between plaintiff and Kreidler to divide the stock so ordered issued; no claim by Kreidler for compensation as a promoter was presented or acted upon, and the other directors were unaware of the fact that plaintiff was to share in the stock so to be issued.

It is *held*:

(1) That the secret agreement between plaintiff and Kreidler to induce the issuance of this stock, subsequently to be divided between them, was fraudulent, illegal and void, a violation of the duty they owed to their associate promoters and the corporation, and unenforceable either against Kreidler or the corporation.

(2) That there was no subsequent ratification by the corporation after knowledge of the facts.

Action in the district court for St. Louis county against Northwestern Clearance Co. and Frank M. Kreidler to compel defendant company to issue to defendant Kriedler the number of shares of stock which he was entitled to receive from that company and to transfer the stock to plaintiff in accordance with the agreement mentioned in the opinion. The separate answer of defendant company prayed that plaintiff take nothing by the action and the answering defendant have judgment against plaintiff that the 35 shares of stock theretofore issued to defendant Kreidler and held by him and plaintiff be cancelled. The case was tried before Cant, J., who made findings and ordered judgment in favor of defendant company and for the cancelation of 35 shares of stock already issued. Plaintiff's motion to amend the findings and one for a new trial was denied. From the judgment entered pursuant to the order for judgment, plaintiff appealed. Affirmed.

*Harold Harris* and *Marion Douglas,* for appellant.

*Fryberger, Fulton & Spear,* for respondents.

BROWN, C. J.

Action to compel the defendant, Northwestern Clearance Co., a corporation, to issue certain stock to defendant Kreidler, and to compel Kreidler to transfer the same to plaintiff. Defendants had judgment in the court below from which plaintiff appealed, having

first moved for amended findings and for a new trial, which the court denied.

The facts disclosed by the record are in brief as follows: Plaintiff, defendant Kreidler and others, were associated together for the purpose of promoting and organizing the defendant corporation. Each agreed to become a stockholder when the corporation was formed, and each undertook to and did perform and render certain services in promoting and organizing the enterprise. Kreidler was the principal figure in the matter and the plan of incorporation was devised by him. He entered into a secret agreement with plaintiff, of which the other promoters were not informed, by which he agreed to divide with plaintiff whatever stock the corporation could be induced to issue to him for his services in promoting the same, the amount of which these two members of the enterprise concluded ought to be about one-third of the total stock issued. In consideration of this agreement plaintiff was induced to enter into and render his services in the promotion plan. Plaintiff thereafter acted as counsellor and advisor of the proposed corporation, and prepared all papers for its organization. The efforts of the parties working for the common purpose resulted in the due incorporation of the company. All of the promoters became stockholders, and stock was duly issued to them in proportion as subscribed and paid for. The capital stock of the corporation was fixed at $50,000, divided into shares of $100 each. The promoters were made the first board of directors, and at their first meeting plaintiff, one of the directors, moved that one-third of the capital stock be issued to Kreidler as and for his services as promoter. A discussion ensued and the motion was amended so as to direct the issuance of 84 shares to Kreidler. Plaintiff was specially insistent that this stock should be issued, and he laid before the board what he knew of the value of Kreidler's efforts. The motion, with some other amendments, not here important, was finally adopted, though the evidence is conflicting upon the question whether a majority of the directors voted for its adoption. No mention was made to the directors of the secret agreement between plaintiff and Kreidler for an equal division of the stock when issued, and none of the other promoters or directors had any notice or knowledge thereof

until some four months after the stock was so ordered issued. No claim was presented either by plaintiff or Kreidler for compensation for services rendered, and no action by the directors fixed or determined that either was entitled to compensation for promotion services. Some of the stock was subsequently issued, but, upon learning of the secret agreement between plaintiff and Kreidler, the secretary refused to issue the remainder, and this action followed, the purpose thereof being to compel the issuance of the stock thus voted by the directors.

The contention of the plaintiff is, (1) that the contract and agreement between plaintiff and Kreidler was valid and enforceable against the corporation, and (2), if invalid, that the corporation with knowledge of the facts rendered the same valid by ratification. We do not sustain either contention.

From whatever viewpoint the case be considered, we have no difficulty in affirming the correctness of the conclusion of the trial court that the agreement was fraudulent and void. Whether the secret agreement be considered in the light of the relations existing between the promoters of the corporation, or in the light of the relation existing between the same persons as stockholders, and their relation to the corporation, the result is the same. Plaintiff and Kreidler and the other persons, as promoters, were engaged in a joint and common enterprise, and each owed to the other the most perfect good faith and fair dealing. Neither could lawfully make any secret profit or advantage over his associates (Church v. Odell, 100 Minn. 98, 110 N. W. 346), and the contract between them with that end in view was illegal and unenforceable. The general principles of the law upon the subject are correctly summed up in 23 Am. & Eng. Enc. (2d ed.) 237, as follows:

"The somewhat common custom among promoters of dividing among themselves a certain portion of the shares of stock of the company promoted, upon the principle of 'division and silence,' is fraudulent, and the surrender of such stock for cancelation may be required, unless it has passed into the hands of *bona fide* purchasers for value; and a very common bargain between promoters and directors, by which the former agree to give to the latter the necessary

shares to qualify them to act as directors upon the condition that the directors return certain of the shares to the promoters, is gross misconduct, and the directors must answer to the corporation for the real value of the shares given them as a part of the fraudulent arrangement."

The law as thus stated is applied generally by the courts. Erlanger v. New Sombrero Phosphate Co. L. R. 3 App. Cas. 1218; Wills v. Coal Co. 52 Ore. 70, 96 Pac. 528; Macey Co. v. Macey, 143 Mich. 138, 106 N. W. 722, 52 L.R.A.(N.S.) 1036; 10 Cyc. 274. Within the rule the agreement in the case at bar was fraudulent and illegal and plaintiff cannot compel his co-conspirator in the fraud, Kreidler, to perform the same. 1 Dunnell, Minn. Dig. § 1885; Holland v. Sheehan, 108 Minn. 362, 122 N. W. 1, 23 L.R.A.(N.S.) 510, 17 Ann. Cas. 687; 15 Am. & Eng. Enc. (2d ed.) 1001.

If the transaction be viewed in the light of the relations existing between plaintiff and Kreidler and the corporation and those the promoters invited to become members thereof, it was equally fraudulent and void. 10 Cyc. 274. The contract was not binding upon the corporation when organized, though it was perhaps subject to adoption and ratification, in so far as it was not a gift of stock without consideration. Battelle v. N. W. C. & C. P. Co. 37 Minn. 89, 33 N. W. 327. As directors of the corporation plaintiff and Kreidler stood in the same relation to the company and its members as they did to their fellow promoters; a relation of trust and confidence, requiring of them the most perfect good faith and open dealing. Kriedler was not entitled, as a matter of legal right, to the issuance of stock to him as a promoter. Our statutes provide that no stock in a corporation organized for pecuniary profit shall be issued, except upon payment of the face value thereof. Section 6193, G. S. 1913; Rogers v. Gross, 67 Minn. 224, 69 N. W. 894; Shaw v. Staight, 107 Minn. 152, 119 N. W. 951, 20 L.R.A.(N.S.) 1077. It is probable that the corporation, on coming into existence, lawfully might award to a promoter reasonable compensation for his services in organizing a company and pay therefor by the issuance of corporate stock. 10 Cyc. 264. But the claimant for compensation for such services owes the same good faith and fair dealing, particularly

when he has become a director of the corporation, as all others occupying a similar fiduciary relation owe to the company. No claim in this case was made for compensation of services; no bill was presented nor opportunity afforded the company to pass upon the reasonableness of any such demand. On the contrary, the whole proceeding on the part of plaintiff and Kreidler was to carry out the prior secret agreement to divide such stock as the company could be induced to issue to Kreidler as a promoter. They wrongfully induced the company to donate one-third the stock to Kreidler. It was not paid for, the other directors at the meeting were not informed of the secret profit and advantage to accrue to plaintiff, and the whole transaction was clearly fraudulent. The corporation ordered the stock issued without knowledge of the facts, and its action in doing so was rightfully repudiated by the officers upon learning the truth. The trial court was right in so deciding.

If either plaintiff or Kreidler has a valid claim against the corporation for services rendered, it should be presented in the usual and orderly way. The law will not aid them in this attempt to determine for themselves the value thereof or, by ordering the stock issued, approve of their violation of the duty they owed to the corporation and their associates. Plaquemines Tropical Fruit Co. v. Buck, 52 N. J. Eq. 219, 27 Atl. 1094; Camden Land Co. v. Lewis, 101 Me. 78, 63 Atl. 523; Lomita Land Co. v. Robinson, 154 Cal. 36, 97 Pac. 10, 18 L.R.A. (N.S.) 1107. It was a palpable violation of plaintiff's duty as director to take part in the proceedings of the corporation and vote this gratuity to himself. No distinction can be made between a profit and an advantage where either is gained by breach of trust.

The trial court found that there had been no ratification of the invalid transaction, by failure promptly to proceed and purge the records of the order to issue the stock, or otherwise, and we discover from the record before us no reason for disapproving that finding. It is fully sustained by the facts presented.

Judgment affirmed.